IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL D. WHITMER, BY AND THROUGH CHELSEA O'BRIEN, ADMINISTRATOR OF SAID ESTATE | Case No. 2:22-cv-02805-JLG-CMV |
| | Judge James L. Graham |
| Plaintiff, | |
| v. | |
| CECIL A. MORRISON, IV | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Cecil A. Morrison, by counsel, respectfully provides his reply in support of his motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

**INTRODUCTION**

Plaintiff's Memorandum in Opposition (Doc. 15) argues that Officer Morrison cannot satisfy his burden for judgment on the pleadings under Fed. R. Civ. P. 12(c) for two general reasons. Plaintiff first argues that the facts alleged in the complaint are sufficient to survive a motion for judgment on the pleadings. But those facts largely rely on legal conclusions that this Court is under no obligation to accept, even when viewing them in a light most favorable to Plaintiff.

Plaintiff next argues that Officer Morrison is collaterally estopped from arguing that he was not negligent in shooting Whitmer, because he entered a no contest plea and was subsequently convicted in a criminal case arising from the same underlying circumstances. But Ohio law

1

encourages a public policy of resolving criminal charges in circumstances like these through plea bargaining while prohibiting the use of such pleas as evidence against defendants in related civil proceedings for the purpose of establishing civil liability. Indeed, Plaintiff's complaint makes no mention at all of Officer Morrison's criminal proceedings, yet the memorandum in opposition attaches them as an exhibit and refers to them now as though liability in this case is a *fait accompli*.

For the reasons set forth in his motion, as well as this reply in support, Officer Morrison respectfully requests that the Court dismiss Plaintiff's claims with prejudice and enter judgment on the pleadings in his favor.

## ARGUMENT

**I.  Even accepting the Complaint's material factual allegations as true, Officer Morrison is still entitled to judgment on the pleadings.**

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007), citing *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973). However, this Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*, citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). Stated differently, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Moreover, "[i]n considering a motion for judgment on the pleadings, a court considers the pleadings, which consist of the complaint, *the answer*, and any written instruments attached as exhibits." *Roe v. Amazon.com*, 170 F.Supp.3d 1028, 1032 (S.D. Ohio, Mar. 15, 2016), citing Fed. R. Civ. P. 12(c); 7(a); 10(c); and *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*,

163 F.3d 449, 452 (7th Cir. 1998) (emphasis added). "While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] also may be taken into account.'" *Id.*, quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). "In addition, a court may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Id.* citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The present motion is one for judgment on *the pleadings*. As such, it is appropriate for factual citations to refer to both the complaint *and* the answer. To the extent that there is a material discrepancy between allegations raised in the pleadings submitted by Plaintiff and Officer Morrison, this Court should construe the allegation in a light that favors the Plaintiff. But to the extent that the answer merely supplements allegations raised in the complaint, it is appropriate for the Court to consider the facts as set forth by Officer Morrison. And insofar as the Court wishes to dispense altogether with competing narratives of the incident in question, it is free to review the footage from Officer Morrison's body cam, a public record under R.C. § 149.43(A)(1) that has been disseminated to the media and is available online.[1] Consideration of such public records is appropriate without converting Officer Morrison's Rule 12 motion to one for summary judgment under Fed. R. Evid. 201(c)(1). It is also required when a party requests the court take judicial notice of adjudicative facts and is supplied with the necessary information under Fed. R. Evid. 201(c)(2). Accordingly, Officer Morrison respectfully requests that the Court take judicial notice of the body cam footage capturing the underlying incident in question.

---

[1] The approximately 40-second body cam video is available online at the following URL, accessed as recently as February 6, 2023:
https://www.athensmessenger.com/warning-graphic-video-shows-body-cam-footage-from-police-killing-of-michael-whitmer/video_2267c901-5e04-5590-b1c2-b1873fab3174.html

3

Notably, the response spends a great deal of time rehashing allegations from the complaint that would only have occurred prior to Officer Morrison's arrival, and would not have been known to him without subsequent investigation. Indeed, while the complaint depicts an alleged account of the underlying circumstances beginning at paragraph 10 under the "Facts" section, it is not until paragraph 23 that Officer Morrison is alleged to have arrived on the scene at 96 Third Street at approximately 7:38 pm the evening of July 27, 2021. (Doc. 1, Page ID 5). The complaint describes Michael Whitmer disobeying orders from Police Officer Tracy to get out of the car several times. Id. The complaint goes on to describe Whitmer leaving the scene of a police investigation, despite clear efforts from Officers Tracy and Morrison to talk to him. Id. at Page ID 6-7. Then, in a flourish of linguistic gymnastics, the complaint describes Officer Morrison moving "directly behind the car and into the gap" Whitmer was driving "about the same time" that Whitmer "began his third attempt to back the car through the gap." Id. at Page ID 7, paragraph 39. While Officer Morrison was fortunate enough to avoid being run over, it was not for lack of effort by Whitmer. Even in its strained attempt to absolve Whitmer of any wrongdoing, the complaint's allegations from paragraphs 39 describe Officer Morrison directly in the path of Whitmer's vehicle, and Whitmer making a conscious decision to lunge his vehicle in "the gap" where Officer Morrison was standing.

Despite Plaintiff's assertions to the contrary, when stripped of innuendo and legal conclusions, the material facts alleged in the complaint are not so different from those described by the present motion that they create a meaningful discrepancy. In fact, while the complaint suggests Officer Tracy lacked probable cause to arrest Whitmer "upon arrival" at the scene in paragraph 14, it stops short of suggesting whether probable cause arose following Whitmer's repeated disobeying of direct orders to exit his vehicle, his repeated collision with a parked Police

4

cruiser, his endangering of Officer Morrison, and his eventual fleeing of the scene. Officer Morrison arrived on the scene to a fellow Police Officer ordering Michael Whitmer to exit his vehicle. Not only did Whitmer disobey this order, he attempted to flee the scene and used his vehicle as a weapon towards Officer Morrison while doing so. The facts as alleged by Plaintiff are consistent with this plain explanation of the thirty seconds that elapsed from the time Officer Morrison arrived to the time he discharged his firearm. These facts are sufficient to award Officer Morrison judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**II.   Ohio law prohibits the use of Officer Morrison's plea and criminal conviction as evidence to establish civil liability, and he is not collaterally estopped from arguing that his actions were reasonable.**

Ironically, after spending a great deal of time arguing about what allegations and evidence are appropriate for the purpose of determining a Rule 12 motion, Plaintiff invokes a plea of "no contest" and related judgment entry in support of the argument that collateral estoppel prohibits Officer Morrison from putting forth a defense as to liability in this civil case. Notably, Plaintiff's "detailed factual allegations" were entirely void of any mention of the plea. But even if it had, Ohio law prohibits use of the plea in this civil case as evidence of Officer Morrison's liability.

Under Ohio Crim. R. 11(B)(2), a plea of no contest "is not an admission of defendant's guilt, but is an admission of the truth of the *facts* alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." (Emphasis added). Similarly, Ohio Evid. R. 410(A)(2) states that evidence of a plea of no contest "is not admissible in any civil or criminal proceeding against the defendant who made the plea." The Federal version of Evidence Rule 410 likewise prohibits a no contest plea from use in a civil case. As the Ohio Supreme Court has explained, the policy behind this prohibition is intended for direct application to the underlying circumstances:

5

> The purpose behind the inadmissibility of no-contest pleas in subsequent proceedings is to encourage plea bargaining as a means of resolving criminal cases *by removing any civil consequences of the plea*… The rule also protects the traditional characteristic of the no-contest plea, which is to avoid the admission of guilt… The prohibition against admitting evidence of no-contest pleas was intended generally to apply to *a civil suit by the victim of the crime against the defendant for injuries resulting from the criminal acts underlying the plea*… The plain language of Evid.R. 410(A) prohibits admission of a no-contest plea, and the prohibition *must likewise apply to the resulting conviction*. To find otherwise would thwart the underlying purpose of the rule and fail to preserve the essential nature of the no-contest plea.

*Elevators Mut. Ins. Co. v. J. Patrick O'Flaherty's, Inc.*, 125 OhioSt.3d 362, 2010-Ohio-1043, 928 N.E.2d 685, ¶ 14 (emphasis added; citations omitted). These rules incentivize plea bargaining by defendants precisely by assuring that a plea of no contest will not be used in a related civil trial. It would make little sense, and completely contradict these rules, if Plaintiff were permitted to use Officer Morrison's plea of no contest and conviction for negligent homicide as evidence of civil liability in this case, let alone dispositive proof that collaterally estops him from providing a defense.

Plaintiff's response in opposition omits any reference to Ohio Crim. R. 11, Fed. Evid. R. 410, or the Ohio Supreme Court's decision in *Elevators Mut. Ins. Co. v. J. Patrick O'Flaherty's, Inc.* Instead, Plaintiff's argument regarding collateral estoppel is founded entirely on three cases – all of which were decided before *Elevators Mut. Ins. Co.* – that are readily distinguishable from the underlying facts.

In *Daubenmire v. City of Columbus*, 507 F.3d 383 (6th Cir. 2007), arrestees brought a § 1983 action against police officers and the city alleging various constitutional violations in connection with their arrests and prosecution for open burning without a permit – a charge they ultimately entered pleas of no contest for, and were convicted of. In their civil suit, the city defendants filed motions to dismiss that were granted. The district court held that the plaintiffs

were collaterally estopped from asserting their constitutional rights had been violated based on the same conduct for which they were found guilty by the state court. *Daubenmire* at 389. The Sixth Circuit Court of Appeals affirmed that the plaintiffs were "estopped by their pleas in state court from now challenging the reasonableness of their arrest in the instant § 1983 action," citing *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988). *Id*. at 390.

Plaintiff also cites *Hastings v. Hubbard*, No. 3:03CV131, 2006 WL 1705202 (S.D. Ohio June 16, 2006), in support of its collateral estoppel argument. In that case, the plaintiff brought a § 1983 action against the defendant police officer for allegedly violating his constitutional rights as well. Similar to *Daubenmire* though, the plaintiff in *Hastings* entered a plea of no contest to a criminal charge: failure to comply with the order of a police officer. *Hastings* at *1. In the civil suit, the defendant arresting police officer argued that the plaintiff's no contest plea and admission of facts barred him from re-litigating pure factual issues that were essential to his present claims. *Id*. at *4. The U.S. District Court for the Southern District of Ohio agreed, and ultimately entered judgment in favor of the defendant police officer.

Plaintiff relies on both of the above-described cases for the proposition that "a State of Ohio criminal conviction resulting from a no contest plea precludes the re-litigation in federal court of the facts underlying the plea and conviction in the state court criminal proceedings." (Doc. 15, Page ID 90). This sweeping proposition of law is, of course, in direct contradiction to Crim. R. 11 and Fed. Evid. R. 410. But it also fails to acknowledge that these cases involve criminal defendants that became civil *plaintiffs*, not civil *defendants*. Moreover, as the Ohio Supreme Court explained, "[t]he prohibition against admitting evidence of no-contest pleas was intended generally to apply to a civil suit by the *victim* of the crime against the *defendant* for injuries resulting from the criminal acts underlying the plea." *Elevators Mut. Ins. Co.* at ¶ 14 (emphasis added; citations

7

omitted). In neither *Daubenmire* nor *Hastings* did the *victim* of any alleged crime bring suit *against the criminal defendant*.

Attempting to address the incongruence of *Daubenmire* and *Hastings* to the present facts, Plaintiff cites *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) for the proposition that "collateral estoppel is not only available to Defendants but *may* be invoked by Plaintiffs in what is sometimes referred to as 'offensive' collateral estoppel." (Doc. 15, Page ID 90, emphasis added) That case involved a stockholder's class action lawsuit against a corporation, its officers, directors, and stockholders who allegedly issued a materially false and misleading proxy statement. Although Plaintiff summarizes the application of offensive collateral estoppel in a single parenthetical sentence, it is worth examining more closely how the decision in *Parklane Hosiery Co.* actually discusses the reasons *against* applying the doctrine:

> In both offensive and defensive [collateral estoppel] use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action. Nevertheless, several reasons have been advanced why the two situations should be treated differently. First, offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does… A second argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable… Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is inconsistent with one or more previous judgments in favor of the defendant… Still another situation where it might be unfair to apply offensive collateral estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result… *The general rule should be that in cases* where a plaintiff could easily have joined in the earlier action or *where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel*.

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-331 (1979) (emphasis added; citations omitted). Many differences exist between *Parklane* and the present case. One is that Ohio law was not at issue. Another is that the underlying facts did not deal with a no contest plea to criminal

8

charges that would have been expressly excluded by the Rules of Criminal Procedure and the Rules of Evidence from introduction in a civil case.

If anything is to be gleaned as applicable from *Parklane*, it is the Supreme Court's admonition that the general rule should be that in cases where there are reasons that the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow its use. In the present circumstances, it would be unfair to set aside Ohio Supreme Court precedent, the clear intent of the Rules of Criminal Procedure, and the Rules of Evidence by allowing Officer Morrison's no contest plea to be dispositive of the claims in this case. To hold otherwise would set a chilling precedent, discouraging plea bargaining and frustrating judicial economy in the process. No authority presented by Plaintiff supports forging such a damaging public policy in the face of clear Ohio law, and this Court should decline to do so.

Because Plaintiff is prohibited from introducing Officer Morrison's plea bargain or the judgment entry from his criminal case as evidence in this case, he is not precluded from arguing that his use of deadly force was reasonable under the circumstances.

**III. Officer Morrison is entitled to dismissal of the 42 U.S.C. § 1983 claims based on qualified immunity.**

A fundamental misunderstanding as to why Officer Morrison discharged his weapon undergirds Plaintiff's opposition to the present motion. Neither Officer Tracy nor Officer Morrison used deadly force merely to prevent Michael Whitmer from escaping. Officer Morrison discharged his firearm in self-defense, because he feared for his life. The Supreme Court of the United States has held that in such circumstances, it is reasonable for a police officer to use deadly force.

Plaintiff describes the two general steps of qualified immunity analysis by relying on *Godawa v. Byrd*, 798 F.3d 457 (6th Cir. 2015). "In one step, the court determines whether 'the

9

facts alleged show the officer's conduct violated a constitutional right'; in the other, it determines whether the right was 'clearly established' at the time of the events." *Id*. at 462-463. Plaintiff then goes on to describe the purported "violation of Michael Whitmer's Fourth Amendment right to be free from being seized by the use of deadly force" (Doc. 15, Page ID 94) by invoking *Tennessee v. Garner*, 471 U.S. 1 (1985): "[w]here the suspect poses *no immediate threat to the officer and no threat to others*, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so… A police officer may not seize *an unarmed, nondangerous suspect* by shooting him dead." *Id*. at 11 (emphasis added).

As described in the pleadings though, Michael Whitmer did pose an immediate threat to Officer Morrison. He was armed with a vehicle that he'd demonstrated no hesitancy about using to smash into a police cruiser, and that he was prepared to direct towards Officer Morrison while lunging in reverse. "It is well established that courts should consider the reasonableness of an officer's use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "In so doing, the objective reasonableness determination should account for the fact that, when faced with 'rapidly evolving' and tense situations, 'police officers are often forced to make split-second judgments' in deciding how much force is necessary given the circumstances." *Godawa* at 464, citing *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). Where an officer "has probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent [the suspect's] escape by using deadly force." *Id*., citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "Where a suspect is attempting to flee in a vehicle, police officers are 'justified in using deadly force against a driver who objectively appears ready to drive into an officer or bystander with his car. But, as a general matter, an officer may not use

10

deadly force once the car moves away, leaving the officer and bystanders in a position of safety." *Id.*, citing *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014).

The underlying case is similar to *Cass*, where a Dayton City Police Department Detective shot and killed the passenger of a vehicle that, moments before the shot was fired, had been driven into two officers in an attempt to escape a drug bust. The Sixth Circuit Court of Appeals affirmed the District Court's grant of summary judgment, explaining:

> As [Detective] House approached the stopped Taurus, clearly signaling his status as a City police officer, Stargell accelerated. Despite House's evasive maneuver, House was struck in the leg as he rolled across the hood of the Taurus. Almost immediately after being hit, House heard St. Clair fire his weapon. Based on his assessment of the scene, he believed that St. Clair had fired in self-defense and that Johns and Murphy were also at risk of being struck by the vehicle. It was only at this point – after he himself had been hit by the Taurus and had heard St. Clair discharge his weapon in what House believed was self-defense – that he attempted to stop the Taurus by shooting at the driver.

*Cass* at 376. Repeated directives from both Officer Tracy and Officer Morrison to Michael Whitmer were ignored or disobeyed. Officer Morrison tried multiple times to get Whitmer to exit his vehicle. It was not until after Morrison repeatedly smashed a parked police cruiser, then lunged his vehicle in reverse directly at Officer Morrison, that Officer Morrison discharged his firearm. By this point, Officer Morrison had probable cause to believe that Whitmer posed a serious threat of physical harm.

Plaintiff's complaint describes Officer Morrison firing "his first six shots" into Whitmer's vehicle before it "came to a stop or near stop," when he "fired two additional shots at Michael while standing still in a position of complete safety." (Doc. 1, Page ID # 9). It is noteworthy that while eight shots were fired, by Plaintiff's own account, *only the last two* were from "a position of complete safety." What is this Court to infer about the first six shots if they were not fired from

11

such a position? The only reasonable conclusion is that Officer Morrison was in harm's way, and feared for his safety.

A comparable description arose in *Hocker v. Pikeville City Police Dept.*, 738 F.3d 150 (6th Cir. 2013), when the plaintiff alleged that "by the time [officers] fired at his vehicle, neither one of them was in harm's way, eliminating any need to use lethal force against him." *Id*. at 155. But as the Sixth Circuit explained:

> *It is not that easy, particularly in the context of the lightning-quick evolution of this encounter.* It is undisputed that neither officer knew where the other one was when they began firing. That one officer was safe does not mean the other one was. This reality by itself justified the officers' conduct. *While it may be easy for Hocker to say that each officer was safe once the officer was no longer in the direct path of Hocker's vehicle, no reasonable officer would say that the night's peril had ended at that point.* Hocker remained in the car, and for the prior ten minutes or so – from the officers' reasonable perspective – had put others, including most recently the officers, in harm's way with his car. *What in that short time span would leave anyone with the impression that Hocker no longer presented a threat to their safety?* He remained in the car, and the car engine remained on. Only Hocker's self-restraint stood in the way of further threats to their safety. From the officers' reasonable perspective, the peril remained.

*Hocker* at 155 (emphasis added).

Officer Morrison was called to assist with a domestic disturbance at 96 Third Street. In the course of his interaction with Mr. Whitmer, Officer Morrison reasonably feared for his life. Mr. Whitmer had used his car as a weapon when attempting to flee the scene. He showed officers he was willing to use his car as a battering ram, despite having his four-year old son in the car, and repeatedly drove his car in a reckless manner at and around the responding officers. At the time Officer Morrison used deadly force and discharged his service weapon, Mr. Whitmer posed a continuing threat to the life of the police officers at the scene, the general public, and Mr. Whitmer's own four-year old child. Under these circumstances, Officer Morrison's use of force was objectively reasonable.

**IV.**     **This Court should decline Plaintiff's invitation to rule as a "matter of first impression" that the "clearly established" prong of the qualified immunity doctrine is met under these circumstances.**

Plaintiff's counsel acknowledges being unable to find any case "in which an officer convicted under Ohio's Negligent Homicide statute was then sued under Section 1983." (Doc. 15, Page ID # 100). This acknowledgment comes as no surprise, given the distinction in facts underlying the *Daubenmire*, *Hastings*, and *Parklane Hosiery Co.* cases that Plaintiff relies upon for its collateral estoppel argument. Plaintiff takes this lack of caselaw as an opportunity to create new law, asking this Court to "rule, as a matter of first impression, that the 'clearly established' prong of the qualified immunity doctrine is met when a law enforcement officer pleads to and is convicted of the crime of Negligent Homicide under O.R.C. § 2903.05 (A) when the facts underlying the Section 1983 claim are the same as those upon which the Negligent Homicide conviction was based." (Doc. 15, Page ID # 101). But Plaintiff's rationale for doing so cuts against the clear intent of Crim. R. 11 and Evid. R. 410 to prevent plea bargains from being used as evidence in civil cases. Succumbing to Plaintiff's proposal will do nothing to protect "violent criminals" from Section 1983 liability. It will merely create a chilling effect in criminal proceedings, and frustrate the efforts of judicial economy.

This Court should not remove the protections of qualified immunity simply because an officer accepts the incentives set forth by Ohio law in a plea bargain. Doing so would cut against public policy, Ohio law, and only increase congestion of court dockets.

**V.**     **This Court should dismiss Plaintiff's state-law claims under Chapter 2744 of the Ohio Revised Code.**

Because the Plaintiff's state law claims are barred by R.C. § 2744.03(A)(6), and because Officer Morrison's actions were objectively reasonable, the state law claims should be dismissed. As discussed above, the material allegations of Plaintiff's complaint cannot sustain a cause of

action against Officer Morrison when innuendo and legal conclusions are removed. But it is apparent that reliance on the complaint alone was never Plaintiff's intent. Instead, Plaintiff relies on Officer Morrison's plea bargain and a collateral estoppel theory made from whole cloth that would undermine Ohio law if embraced. The argument finds its way into each section of Plaintiff's response in some form or fashion, gaining momentum by the end where it boldly claims Officer Morrison "cannot now be heard to argue the shooting was in fact not negligent, but instead justified by self-defense and reasonable." (Doc. 15, Page ID # 102). Of course, Plaintiff offers no authority for this breathless assertion, and as stated previously, Officer Morrison – like any other criminal defendant who enters a plea of no contest – is entitled to exactly what Plaintiff would have this Court strip away: the protections of Ohio's Rules of Criminal Procedure, the Federal Rules of Evidence, and well-established precedent that criminal pleas cannot be used to establish liability in related civil trials. For the reasons set forth above and in the present motion, this Court should dismiss the state law claims brought by Plaintiff as well.

## CONCLUSION

For the reasons set forth herein, the Court should grant Defendant Officer Morrison's motion for judgment on the pleadings.

Respectfully submitted,

FROST BROWN TODD LLP

By: */s/ Charles B. Galvin*
    Frank J. Reed, Jr. (0055234)
    10 West Broad Street, Suite 2300
    Columbus, Ohio 43215
    Telephone (614) 464-1211
    Facsimile (614) 464-1737
    Email: freed@fbtlaw.com

    Charles B. Galvin (0091138)
    9277 Centre Pointe Drive, Suite 300
    West Chester, Ohio 45069
    Telephone (513) 870-8200
    Facsimile (513) 870-0999
    Email: cgalvin@fbtlaw.com

    *Attorneys for Defendant Cecil A. Morrison, IV*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    */s/ Charles B. Galvin*
    Charles B. Galvin (0091138)

0126311.0760569 4893-7730-5167v2