IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Estate of Michael D. Whitmer, by and
through Administrator Chelsea O'Brien,　　　　　Case No: 2:22-cv-2805

　　　　Plaintiff,　　　　　　　　　　　　　　　　Judge Graham

　　v.　　　　　　　　　　　　　　　　　　　　Magistrate Judge Vascura

Cecil A. Morrison, IV,

　　　　Defendant.

Opinion and Order

　　　　Plaintiff Chelsea O'Brien, as Administrator of the Estate of Michael D. Whitmer, brings this action under 42 U.S.C. § 1983. Plaintiff alleges that defendant Cecil A. Morrison, IV, a police officer with the Hocking College Police Department, used excessive force when he fired eight gunshots from close range at a vehicle Whitmer was operating. Whitmer died of multiple gunshot wounds.

　　　　This matter is before the Court on defendant's motion for judgment on the pleadings. Because the motion relies on a version of facts contrary to the facts alleged in the Complaint, the Court denies the motion.

I.　　Background

　　A.　　Factual Allegations of the Complaint

　　　　At 7:37 p.m. on July 27, 2021, Whitmer stood near his Chevy sedan outside his residence in an apartment building in Nelsonville, Ohio. His four-year-old son was buckled in a child seat in the back of the car.

　　　　A call had been made to police from a resident of one of the apartments. The caller reported hearing loud voices coming from Whitmer's apartment. The caller did not report that there was a crime being committed, a threat of weapons, or a physical altercation. There was no warrant outstanding for Whitmer's arrest.

　　　　Nelsonville Police Officer KJ Tracy arrived as Whitmer was getting into the driver's seat of his car. Officer Tracy approached with his handgun drawn and yelled for Whitmer to get out of the car and show his hands.

　　　　Whitmer stayed seated in his car. He raised his hands at least twice to show Officer Tracy that his hands were empty and that he did not have a weapon. Whitmer rolled down his window,

1

which caused Officer Tracy to take a step back from his position near the driver's-side door. Whitmer attempted to say something, but Officer Tracy continued to yell for Whitmer to exit the car. Whitmer rolled the window most of the way back up and remained in the car.

Whitmer then motioned with his hands, pointing backwards, to communicate that he wanted to back his car out of the driveway. Officer Tracy shouted, "No." Whitmer remained seated and began smoking a cigarette. Officer Tracy yelled that he was going to bust the driver's-side window open. Whitmer repeatedly showed his hands to demonstrate that he did not have a weapon.

Several other officers arrived on the scene, including defendant Morrison, who was assisting pursuant to a mutual aid agreement between Hocking College and the City of Nelsonville.

An officer had parked a police SUV in a position that partially blocked Whitmer's ability to back out of the driveway and exit onto the street. A small, unblocked gap remained.

Officer Morrison approached with his handgun drawn and stood near Officer Tracy on the driver's side of Whitmer's car. As they yelled for him to get out of the car, Whitmer showed that his hands were empty and motioned that he intended to back the car out. Officer Morrison struck the driver's window of Whitmer's car three times with an object, but the glass did not break.

Whitmer began backing his car up towards the gap in the driveway. Officer Morrison remained in his position while Officer Tracy walked alongside the car, placing his hands on it and telling Whitmer to get out of the car. Whitmer's car made contact with the unoccupied police SUV and he pulled his car forward into the driveway. Whitmer then backed up once more and again hit the police SUV.

Officer Morrison crossed the driveway to where the passenger's side of Whitmer's car had been. Whitmer pulled his car forward again, and Officer Morrison stood about six feet away from the rear bumper on the passenger's side.

Officer Morrison then moved to try to block the gap behind Whitmer's car. Whitmer began backing up for a third time. Officer Morrison stepped to the side and, as the car was backing up, Officer Morrison stood facing it and fired six shots into the car.

Whitmer came to a stop in the street, with the driver's side of the car facing the driveway and the two officers. Officer Morrison fired two more shots into the car. Whitmer attempted to drive away but soon lost consciousness and the car came to a stop in a nearby yard.

Whitmer was taken to a local hospital, where he was declared dead. The coroner determined the cause of death to be "multiple gunshot wounds."

Whitmer's son sustained injuries from flying glass fragments caused when the gunshots pierced the windshield or windows.

### B. Defendant's Answer

In his Answer, defendant admits that he responded on July 27, 2021 to a call for assistance at the apartment building where Whitmer resided. He admits that Nelsonville Police officers were already present when he arrived and that a police vehicle was partially blocking the driveway.

Defendant further admits that officers repeatedly demanded that Whitmer exit his vehicle and that Whitmer did not comply. Defendant admits that Whitmer made three attempts to back his car out of the driveway and twice made contact with the police SUV.

Defendant also admits that he fired shots at Whitmer's car. But according to defendant, Whitmer "used his car as a weapon and steered it toward Defendant multiple times." Doc. 5 at ¶ 41.

### C. Causes of Action

The Complaint alleges that defendant violated Whitmer's right against the use of excessive force under the Fourth and Fourteenth Amendment to the United States Constitution. Plaintiff asserts a cause of action under § 1983 for money damages relating to: Whitmer's pain and suffering (from the time of the first gunshot wound until his death); medical expenses; wrongful death; and loss of consortium, on behalf of Whitmer's surviving spouse and dependent children.

The Complaint also asserts state law claims for assault and battery.

## II. Standard of Review

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to motions for judgment on the pleadings is the same standard applicable to motions to dismiss under Rule 12(b)(6). *See Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual

allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. Discussion

#### A. The Complaint Adequately Alleges a Constitutional Deprivation

To maintain a claim under 42 U.S.C. § 1983, plaintiff must establish that Whitmer was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Officer Morrison concedes that he was acting under color of state law when he responded to the call to assist outside of Whitmer's apartment building.

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. The United States Supreme Court "has long held that a 'seizure' qualifies as 'unreasonable' if officers use excessive force" in carrying out an arrest or seizure. *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 489 (6th Cir. 2020) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Courts employ an objective-reasonableness test in evaluating whether an officer has used excessive force in violation of the Fourth Amendment, "asking 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Est. of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (quoting *Graham*, 490 U.S. at 397). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

A court applies the following three-factor test in assessing the objective reasonableness of an officer's use of force: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *Est. of Hill*, 853 F.3d at 313.

In the context of "deadly-force claims involving vehicular flight," "the critical question is typically whether the officer has 'reason to believe that the [fleeing] car presents an imminent

4

danger' to 'officers and members of the public in the area.'" *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014) (quoting *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005)).

Defendant argues that he used objectively reasonable force. According to defendant's brief, Officer Morrison observed Whitmer using "his car as a battering ram." Doc. 11 at PAGEID 54. Whitmer "repeatedly drove his car in a reckless manner at and around the responding officers." *Id.* Defendant insists that Whitmer "demonstrated his willingness to harm both Officer Morrison and Officer Tracy." *Id.* Defendant further asserts that Whitmer's battering-ram maneuvers endangered Whitmer's son and showed that Whitmer also posed a risk to the public had he been able to flee.

The Court must point out, as did plaintiff, that defendant's argument is based on factual allegations and inferences which are not supported by the Complaint. Defendant's response to this point is that his Answer forms a part of the pleadings and must be considered on a motion for judgment on the pleadings. He believes that he should be allowed to "supplement" the allegations made in the Complaint and that "it is appropriate for the Court to consider the facts as set forth by Officer Morrison." Doc. 18 at PAGEID 116.

Defendant is simply wrong about the standard of review. Though the Answer is a pleading, *see* Fed. R. Civ. P. 7(a)(2), the Court must accept as true "all well-pleaded material allegations of the pleadings of the opposing party" to the motion. *Winget*, 510 F.3d at 581. This means that the Court must "construe the complaint in the light most favorable to [plaintiff], accept her allegations as true, and draw all reasonable inferences in her favor." *Osberry v. Slusher*, 750 Fed. App'x 385, 389 (6th Cir. 2018). The Court does not accept defendant's "counter-factual allegations" as true. *Id.*

The Court's job thus is to apply the *Graham* factors to the facts alleged in the Complaint. The first factor is the severity of the crime, and it favors plaintiff. The Complaint alleges that there was no crime of which Whitmer was accused or suspected. Police responded to a call that there were "raised voices" coming from Whitmer's apartment. Doc. 1, ¶ 14. The caller did not report that they had witnessed a crime, observed anyone in distress or in a physical altercation, or heard or seen a weapon. *See id.*, ¶ 24. There were no warrants out for Whitmer's arrest. *See id.*, ¶ 12.

Skipping to the third factor of whether Whitmer resisted or evaded, the factual allegations do not favor plaintiff. The Complaint alleges that Whitmer repeatedly ignored officers' instructions for him to exit the car. He also ignored Officer Tracy's answer of "No" when he first communicated a desire to back out of the driveway. And Whitmer attempted to back out despite an officer having positioned a police SUV in a way that indicated an effort to impede Whitmer from exiting.

In this use of deadly force case, the second factor regarding imminent danger is critical and it is where defendant has attempted to inject his version of the facts. But the Complaint's allegations support an inference that none of the officers were under threat of serious harm. According to the Complaint, Whitmer showed his empty hands many times and officers had no reason to believe he had a weapon. *See* Doc. 1, ¶¶ 15, 20, 22, 26. Whitmer did not act agitated or excitable, and when Officer Tracy first told him "No" to backing up, Whitmer in resignation began smoking a cigarette while remaining in the driver's seat. *See id.*, ¶ 20. Whitmer did not threaten or yell at the officers. When he rolled his window down and attempted to talk to Officer Tracy, Whitmer "could not make himself heard over [Officer] Tracy's shouting." *Id.*, ¶ 16.

Defendant contends that Whitmer used his car as a weapon or battering ram. The Complaint's allegations do not lead to this inference. The Complaint alleges that Whitmer operated the car at a slow enough speed that Officer Tracy was able to walk alongside of it with his hands on the side of the car. *See id.*, ¶ 29. The contact which Whitmer's sedan made with the police SUV was a "sideswipe" and not a ramming or battering. *Id.*, ¶ 30.

Whitmer repeatedly signaled his intention to back up so as to not take the officers by surprise. *See id.*, ¶¶ 18, 26, 36. And rather than aim his car at an officer, the Complaint alleges that Whitmer attempted to pull away from them. *See id.*, ¶¶ 28, 32. Whitmer's driving movements down and back up the driveway were such that the officers did not need to move and had no difficulty repositioning themselves safely. *See id.*, ¶¶ 31, 35, 37.

According to the Complaint, it was Officer Morrison who chose to leave his position of safety six feet away from the car and move towards it as Whitmer backed up for a third time. *See id.*, ¶ 39. When Officer Morrison fired his handgun, he was in no danger of being struck by the car, which was backing away from him. *See id.*, ¶ 41. There are no allegations of there having been bystanders or other vehicular traffic in harm's way as Whitmer backed into the street.

The Complaint alleges that Officer Morrison fired two additional shots after Whitmer came to a stop on the street. Officer Morrison was not in danger when he fired the shots, as he stood at least ten feet away and faced the driver's side of the car. *See id.*, ¶¶ 42, 43.

The Court finds that, based solely on the Complaint, the alleged situation is not one where Officer Morrison had an objectively reasonable belief that Whitmer "appear[ed] ready to drive into an officer or bystander with his car." *Hermiz v. City of Southfield*, 484 Fed. App'x 13, 16 (6th Cir. 2012). The alleged situation instead is one where Officer Morrison chose to use deadly force at a moment when neither he nor the other officers or any bystanders were in danger. *See Cass*, 770 F.3d

6

at 375 ("[A]s a general matter, an officer may not use deadly force once the car moves away, leaving the officer and bystanders in a position of safety.") (internal quotation marks omitted).

Defendant contends that Whitmer demonstrated a willingness to endanger his four-year-old son. Certainly, by twice making contact with the police SUV, even at low speed and with the child secured in a car seat, Whitmer put his son at risk of some injury. But the Court cannot conclude from the Complaint's allegations that the risk to the child was such that it justified Officer Morrison firing eight rounds into the windshield/windows of the car – an action which itself potentially posed a significant risk to the child.

Finally, defendant asks the Court to "dispense altogether" with plaintiff's "competing" narrative and consider video footage from Officer Morrison's body camera. Doc. 18 at PAGEID 116. According to defendant, the footage qualifies as a "public record" under Ohio law pursuant to O.R.C. § 149.43(A)(1).

A court may consider video evidence "when deciding a Rule 12 motion if the video 'utterly discredits' the plaintiff's version of events." *Osberry*, 750 Fed. App'x at 390 (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017)). That is, a court need not accept the complaint's factual allegations as true if the video "so blatantly and conclusively contradict[s]" the factual allegations central to plaintiff's claims that "no reasonable jury could watch the video and agree with the plaintiff." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that a court is not bound by a "visible fiction")).

After reviewing the body cam video, the Court concludes that is does not utterly discredit plaintiff's version of events. It shows that when Officer Morrison arrived on the scene, Officer Tracy stood near the driver's door and was putting his firearm away in his belt. Officer Tracy tried unsuccessfully to open the driver's door. A child is visible in the rear passenger's side seat. Whitmer's empty hands can be seen at or near the steering wheel.

As Whitmer made his first attempt to back up, Officer Tracy walked alongside the car with both hands on the driver's door or window. Officer Morrison was out of the car's path. The rear of Whitmer's car cleared the police SUV, but the front corner of his car made contact with the front corner of the police SUV as Whitmer turned the steering wheel to pull into the street.

Officer Tracy continued moving alongside the driver's side of the car as Whitmer pulled back into the short driveway, with Officer Morrison still out of the way. In the second attempt to back up, the rear of Whitmer's car appears to make contact with the front corner of the police SUV.

Officer Morrison again was not in the car's path, and he crossed the driveway to where the passenger's side of the car had been.

When Whitmer pulled back into the driveway, Officer Morrison positioned himself near the police SUV. He appears to have been at least half of a car's length away from the rear end of Whitmer's car. Officer Morrison kept his firearm drawn and crossed behind Whitmer's car as Whitmer started backing up for a third time. Officer Tracy remained in the driveway near the driver's side and did not pull his firearm.

As Officer Morrison ran across behind Whitmer's car, the rear driver's side bumper came close to Officer Morrison's body. Officer Morrison had crossed over to the driver's side of the car when he began firing shots; he was not in front of or behind the car. The shots shattered the front and rear windows on the driver's side.

The street onto which Whitmer pulled his car appears to be a small residential street. There is no vehicular or pedestrian traffic visible from the footage, nor are there any bystanders who appear to be in harm's way. Several people appear to be standing in a yard at a house down the street, but they are in the opposite direction from where Whitmer was pointing his car.

In sum, the Court finds that the video does not "blatantly and conclusively" contradict the factual allegations of the Complaint. The video therefore is disregarded at the Rule 12 stage.

Accepting as true the Complaint's well-pleaded allegations, the Court finds that they support an inference that Officer Morrison's use of deadly force was not objectively reasonable and that he thereby deprived Whitmer's rights under the Fourth Amendment.

### B. Qualified Immunity

Defendant argues that he is entitled to qualified immunity. Under the doctrine of qualified immunity, government actors are shielded from civil liability in the performance of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Courts use a two-step inquiry to analyze qualified immunity: (1) whether the government official's conduct violated a constitutional right, and (2) whether that right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Court finds that the first step is satisfied for the reasons discussed above. The Court also finds that the right against the use of excessive force was clearly established at the time of the events at issue. The Sixth Circuit's 2005 decision in *Smith v. Cupp*, 430 F.3d 766, 775–76 (6th Cir. 2005) discussed at length several decades' worth of legal precedent establishing that an officer violates the Fourth Amendment if he uses deadly force to halt a fleeing suspect but lacks reason to believe that the fleeing suspect poses an imminent danger to officers or members of the public. The court held that the Supreme Court's decisions in *Graham* (holding that a use of force must be objectively reasonable) and *Tennessee v. Garner*, 471 U.S. 1 (1985) (holding that an officer cannot shoot a non-dangerous fleeing suspect in the back of the head), "clearly establish that a suspect fleeing in a car that has never posed a danger to anyone has the clearly established right not to be seized with deadly force. *Cupp*, 430 F.3d at 777.

The Court thus finds that defendant is not entitled to qualified immunity at this stage of the proceedings.

C. State Law Claims

Defendant argues that plaintiff's state law clams for assault and battery fail because Ohio law provides a defense for when an officer did not act with a malicious purpose, in bad faith, or in a wanton or reckless manner. *See* O.R.C. § 2744.03 (A)(6)(b). Defendant again bases his argument upon his version of the facts and not those alleged in the Complaint.

The Court finds that defendant is not entitled to the state law defense at this early stage. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances . . . ." *Anderson v. Massillon*, 134 Ohio St. 3d 380, 388, 983 N.E.2d 266, 273 (2012). The Complaint adequately alleges that Officer Morrison acted recklessly, in that he used deadly force against an unarmed individual who had not committed a crime and whose attempt to flee in a motor vehicle did not pose a risk of serious harm to officers or the public.

IV. Conclusion

For the reasons stated above, defendant's motion for judgment on the pleadings (doc. 11) is DENIED.

*s/ James L. Graham*  
JAMES L. GRAHAM  
United States District Judge

DATE: October 2, 2023

9