**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **ESTATE OF MICHAEL D. WHITMER, BY AND THROUGH CHELSEA O'BRIEN, ADMINISTRATOR OF SAID ESTATE** | : : : : : | **Case No. 2:22-cv-02805-JLG-CMV** |
|  | : | **JUDGE JAMES L. GRAHAM** |
| Plaintiff, | : | |
|  | : | **MAGISTRATE JUDGE CHELSEY M. VASCURA** |
| **v.** | : | |
|  | : | |
| **CECIL A. MORRISON, IV** | : | |
|  | : | **CECIL A. MORRISON, IV'S MOTION** |
| Defendant. | : | **FOR SUMMARY JUDGMENT** |

_____

Pursuant to Fed. R. Civ. P. 56, Defendant Cecil A. Morrison, IV ("Officer Morrison") moves this Court for summary judgment on all claims asserted against him in this action by Plaintiff.

Officer Morrison was a Hocking College Police Officer. On July 27, 2021, Officer Morrison responded to 96 Third St. in response to Nelsonville Police Officer KJ Tracy's call for help at the scene of a reported domestic altercation. Body Worn Camera video definitively shows that Officer Morrison arrived at a chaotic scene between Officer Tracy and Michael Whitmer ("Whitmer"), who refused to comply with orders to get out of his vehicle.

Within 40 seconds of Officer Morrison's arrival, Whitmer was ordered out of the car at least ten times. Within 40 seconds of Officer Morrison's arrival, Whitmer accelerated his car in reverse two times into Officer Tracy's marked patrol vehicle, and a third time directly in Officer Morrison's direction. As Whitmer's vehicle sped towards Officer Morrison, Officer Morrison fired shots into the vehicle in order to protect himself from what he reasonably believed to be an imminent threat of death or serious bodily harm.

1

No genuine issues of material fact exist, and Officer Morrison is entitled to judgment as a matter of law. A memorandum in support of this motion is attached hereto, along with supporting exhibits.

Respectfully submitted,

FROST BROWN TODD LLP

By: */s/ Charles B. Galvin*
  Frank J. Reed, Jr. (0055234)
  10 West Broad Street, Suite 2300
  Columbus, Ohio 43215
  Telephone (614) 464-1211
  Facsimile (614) 464-1737
  Email: freed@fbtlaw.com

  Charles B. Galvin (0091138)
  9277 Centre Pointe Drive, Suite 300
  West Chester, Ohio 45069
  Telephone (513) 870-8200
  Facsimile (513) 870-0999
  Email: cgalvin@fbtlaw.com

  Paul-Michael La Fayette (0067031)
  65 East State Street, Suite 2550
  Columbus, Ohio 43215
  Telephone (614) 683-8471
  Facsimile (888) 356-3590
  Email: Paul.LaFayette@fmglaw.com

  *Attorneys for Defendant Cecil A. Morrison, IV*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| **ESTATE OF MICHAEL D. WHITMER,** | : | |
| **BY AND THROUGH CHELSEA** | : | **Case No. 2:22-cv-02805-JLG-CMV** |
| **O'BRIEN, ADMINISTRATOR OF SAID** | : | |
| **ESTATE** | : | |
| | : | |
| | : | **JUDGE JAMES L. GRAHAM** |
| Plaintiff, | : | |
| | : | **MAGISTRATE JUDGE CHELSEY M.** |
| **v.** | : | **VASCURA** |
| | : | |
| **CECIL A. MORRISON, IV** | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF CECIL A. MORRISON, IV'S
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This case arises out of the confrontation between Decedent Michael Whitmer, Officer Tracy, and Officer Morrison on July 27, 2021, which led to Whitmer's death. (Doc. 1, Complaint, Page ID 9).  On July 14, 2022, Chelsea O'Brien, the spouse of Whitmer and administrator of his estate ("Plaintiff"), commenced this action against Officer Morrison in his individual capacity. (Doc. 1, Page ID 1).

Plaintiff brings claims against Officer Morrison under 42 U.S.C. § 1983 asserting that Officer Morrison deprived Whitmer of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, including (1) the right to be free from unreasonable seizures and (2) the right to be free from the use of excessive, unreasonable and unjustified force. (Doc. 1, Page ID 11). Plaintiff also brings state-law claims against Officer Morrison for assault, battery, and wrongful death. (Doc. 1, Page ID 11-12). Although the loss of Whitmer's life is tragic, Officer

Morrison's conduct was objectively reasonable under the circumstances he faced, and he is entitled to summary judgment, qualified immunity, and statutory immunity.

## II. FACTUAL BACKGROUND

### A. Officer Tracy's call for backup

On July 27, 2021, Officer Tracy of the Nelsonville Police Department responded to a report of a domestic dispute at 96 Third St. Apt. A. (Ex. 1, Ohio Attorney General's Office BCI Investigative Report, pg. 3). Upon his arrival, Officer Tracy encountered Whitmer in the driveway. Whitmer proceeded to enter into a red Chevrolet Cobalt that was parked in the driveway and immediately lock the doors, with a child in the rear seat. Officer Tracy ordered Whitmer out of the car, but Whitmer refused and was not compliant with the orders. As a result, Officer Tracy requested police backup.

Officer Morrison was employed by Hocking College Police Department and authorized to respond to calls in Nelsonville pursuant to a mutual aid agreement between Hocking College and the City of Nelsonville. (Doc. 1, Page ID 2). Officer Morrison responded to the scene in order to assist Officer Tracy. Officer Morrison was wearing his standard issued uniform and arrived in his patrol car with lights and siren engaged. (Ex. 2, Ohio Attorney General's Office BCI Interview with Officer Morrison, pg. 2; Ex. 6, Affidavit of Cecil A. Morrison, IV., ¶¶ 5, 7).

### B. Whitmer's continued refusal to follow lawful orders

Upon his arrival at the scene, Officer Morrison observed Officer Tracy at the driver's door of the car in the driveway. (Ex. 3, Officer Morrison's Body Worn Camera Video 00:04). At that time, Officer Tracy had his gun drawn and was ordering Whitmer to get out of the car or Officer Tracy would break the window. (*Id*.). Whitmer refused to get out of the car. (*Id*.). Officer Morrison attempted to break the driver's window with a flashlight but was unsuccessful. (*Id*. at 00:13).

Officer Morrison's body worn camera video depicts, with clarity, what transpired within his first 40 seconds on the scene. Officer Tracy ordered Whitmer out of the car at least ten times after Officer Morrison arrived. (*Id.* at 00:04-00:20).

At no point did Whitmer open his car door or exit his vehicle. Within 16 seconds of Officer Morrison's arrival, Whitmer accelerated his car in reverse and crashed into Officer Tracy's patrol vehicle. (*Id.* at 00:15). At this point of the interaction, the ground situation changed. (Ex. 4, Expert Report of John J. Ryan, pg. 17).

Officers are trained that they will be confronted with events where they will be forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving, about the amount of force that is necessary in a particular situation. (*Id.*). Split-second decision making includes the decisions that must be made as the ground situation changes. (*Id.*). When Whitmer was unsuccessful in exiting the driveway, he drove his car forward, turned the wheels, and again accelerated his car in reverse directly into Officer Tracy's patrol vehicle. (Ex. 3 at 00:19-00:25). Officer Morrison moved around in the driveway in an effort to not be struck by Whitmer's vehicle. (Ex. 2, at ¶ 12, Ex. 6, at ¶ 11).



(Ex. 3 at 00:25).

It is well understood in law enforcement that the use of force must be judged from the perspective of the officer on the scene. (*See Graham v. Connor*, 490 U.S. 286, 396 (1989)). Officer Morrison reasonably believed that he was going to be struck by the accelerating and reversing vehicle being driven by an individual who had already failed to comply with numerous verbal commands. (Ex. 4, pg 17.). Officer Morrison acted consistently with training by acting in self defense. (*Id*., pg. 18).

### C.   The shooting

Within 30 seconds of Officer Morrison's arrival, he was positioned behind Whitmer's vehicle when Whitmer turned the wheels and accelerated in reverse directly towards Officer Morrison. (Ex. 3 at 00:30-00:31).



(*Id*. at 00:30).



(Ex. 3 at 00:32).

At this point, Officer Morrison felt boxed in and that he had nowhere to escape. (Ex. 2, at ¶ 12, Ex. 6, at ¶ 14).



(Ex. 3 at 00:32)

Within one second of Whitmer accelerating his vehicle towards Officer Morrison, Officer Morrison feared for his life and fired eight rounds at the vehicle. (Ex. 3 at 00:32). Officer Morrison fired shots because he felt there was nothing else he could do at that moment. (Ex. 6, at ¶ 14).

### D. The use of force review

Officer Kyle Groves from the City of Logan Police Department completed a use of force review of the July 27, 2021 interaction between Officer Tracy, Officer Morrison, and Whitmer. (Ex. 5, Use of Force Review by Officer Kyle Groves). Officer Groves reviewed the Hocking College Police Department Policies and Procedures to determine whether Officer Morrison complied with his department's policies. (*Id*., pg. 1).

Officer Groves focused his review on the following policies: 25.05 Lethal Force Procedure, 25.06 Discharging a Firearm, Restrictions, 25.07 Exhibiting a Firearm Restrictions, 25.11 Training and Qualifications – Lethal Force Weapons, 25.12 Medical Assistance, 25.13 Notification of Supervisor, and 25.14 Completion of Incident/Case Report after Use of Force. (*Id*., pgs. 2-5).

Officer Groves concluded that Officer Morrison did not needlessly put himself at risk by standing at the rear of the vehicle, but rather the body worn camera footage demonstrated that Officer Morrison moved to the end of the driveway and was beside a bush when Whitmer began backing up. (*Id*. pg. 5). Further, Officer Groves determined that Officer Morrison moved towards the bush and driveway of another apartment when Whitmer's vehicle moved towards him rapidly. (*Id.*). Ultimately, Officer Groves found that Officer Morrison complied with the use of force and firearm policies because he only fired his handgun in defense of himself. (*Id*. pg. 6).

### 1. Officer Morrison did not violate the Lethal Force Procedure

Based upon his independent review of the incident, Officer Groves determined that Officer Morrison complied with the lethal force procedure which allows an officer to utilize lethal force

to protect the officer or other persons from what is reasonably believed to be an imminent threat of death or serious bodily harm. (*Id*. pg. 2). Officer Groves found that Officer Morrison feared for his life and fired into the vehicle as Whitmer rapidly began backing toward Officer Morrison. (*Id*.).

Further, Officer Groves determined that Officer Morrison complied with the procedure to attempt to identify himself and state his intent to shoot, where feasible, before using a firearm due to the fact that both Officer Morrison and Officer Tracy were wearing their normal duty uniforms with patches, badges, and a duty belt, both officers were visible to Whitmer, and both officers gave Whitmer verbal commands that were heard by non-involved witnesses. (*Id*.).

### 2. Officer Morrison did not violate the Discharging a Firearm Procedure

Officer Groves found that Officer Morrison complied with the policy that officers may fire their weapons at or from a moving vehicle when the standard for lethal force is met and after considering the totality of the circumstances. (*Id*. pg. 3). Officer Groves determined that Officer Morrison discharged his weapon at Whitmer's vehicle after he believe that he was "boxed in" and feared for his life. (*Id*.).

### 3. Officer Morrison did not violate the Exhibiting a Firearm Procedure

Officer Groves determined that Officer Morrison complied with the policy that officers may exhibit their firearm when the circumstances create a reasonable suspicion that it may be necessary to use the weapon in conformance with the policy. (*Id*.). Based upon his review of the evidence, Officer Groves found that Officer Morrison responded to a request for assistance from Officer Tracy regarding a domestic disturbance investigation, Officer Morrison observed Officer Tracy standing at the driver's door of the vehicle upon his arrival, and Officer Morrison observed Officer Tracy give Whitmer verbal commands to exit the vehicle. (*Id*.).

Officer Groves determined that Officer Morrison kept his handgun available while Officer Tracy holstered his handgun to attempt to open the driver's door. (*Id.*). Additionally, Officer Groves observed in the body worn camera footage that Officer Morrison lowered his handgun at various times during the incident and pointed it at the vehicle when Whitmer began rapidly backing toward Officer Morrison and nearly struck Officer Morrison with his vehicle. (*Id.*).

### 4. Officer Morrison was compliant with Training and Qualifications

Officer Groves reviewed department records and determined that Officer Morrison was carrying his department-issued handgun at the time of the incident, and that he had completed the required handgun training, qualifications, and reviews. (*Id.* pgs. 3-4).

### 5. Officer Morrison did not violate the Medical Assistance, Notification of Supervisor, or Completion of Report Policies

Officer Groves determined that Officer Morrison requested medical assistance for both the injured officer and Whitmer, requested that the Chief be notified of the incident and respond to the scene, and completed the necessary reports. (*Id.* pgs. 4-5).

## III. ARGUMENT

### A. Standard of Review

Summary judgment is required when there is no genuine dispute about any material fact as to a claim or part of a claim. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the non-moving party must point to some admissible evidence that would create a genuine issue of fact on the precise question at issue. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where the relevant facts are recorded on video, courts "view those facts as the video depicts." *Tucker v. Marquette Cty.*, 6th Cir. No. 20-1878, 2021 U.S. App. LEXIS 20366, at *5 (July 7, 2021) (citing *Cunningham v. Shelby County*, 994 F.3d 761, 765 (6th Cir. 2021)). Courts only construe video evidence in favor of the non-moving party "[i]f any uncertainty remains." *Tucker*, 2021 U.S. App. LEXIS 20366, at *5 (citing *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)). No such uncertainty is present here. Even though the Court must view the evidence and draw all reasonable inferences in the Plaintiff's favor, Plaintiff must still identify specific facts within the record showing there is a genuine issue of material fact. *See Muncie Power Prods v. United Techs. Auto.*, 328 F.3d 870, 873 (6th Cir. 2003).

The "dispute must present a *genuine* dispute of *material* fact." *Rogers v. O'Donnell,* 737 F.3d 1026, 1030 (6th Cir. 2013) (emphasis in original). A fact is "material" only if its resolution "might affect the outcome of the suit under the governing law," and a dispute is "genuine" only if the "evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 251-52 (1986). Summary judgment should be granted when the evidence is so one-sided that one party must prevail as a matter of law. (*Id*. at 251). Plaintiffs cannot rely upon a "mere existence of a scintilla of evidence in support of [their] position." (*Id*. at 252). There is no genuine issue of material fact here. Therefore, Officer Morrison respectfully asks this Court to grant his Motion for Summary Judgment.

### B.     <u>Plaintiff's Federal claims against Officer Morrison fail</u>

Plaintiff has asserted claims against Officer Morrison under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments. (Doc. 1, Page ID 12). For the following reasons, Officer Morrison is entitled to qualified immunity and summary judgment for those claims.

Qualified immunity shields government officials from liability for civil damages under 42 U.S.C. § 1983 so long as their actions do not violate any clearly established statutory or constitutional rights of which a reasonable person would have known at the time of the incident. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). It affords "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). "In a civil suit arising from the use of deadly force, immunity should be recognized 'if officers of reasonable competence could disagree on the issue.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Malley*, 475 U.S. at 341).

Here, Plaintiff must demonstrate that Officer Morrison is not entitled to qualified immunity. *See Chappell*, 585 F.3d at 907. Therefore, Plaintiff bears the burden of showing that, when the evidence is viewed in its favor: (1) a constitutional right was violated; and (2) that right was clearly established at the time of the violation. *See id*. Courts have discretion to decide which of the "two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Because Plaintiff cannot demonstrate either prong of this test, it fails to carry its burden.

## 1.     **Plaintiff's Fourth Amendment claim for excessive force fails**

Plaintiff alleges that Officer Morrison used excessive force against Whitmer in violation of the Fourth Amendment. However, Officer Morrison is entitled to summary judgment because his use of force was reasonable under the Fourth Amendment. Additionally, he is entitled to qualified immunity because he did not violate any clearly established constitutional right.

The Fourth Amendment guarantees the right to be free from unreasonable seizures, which includes the right to be free from excessive force. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). An "objective reasonableness" standard governs whether an officer's particular use of force was excessive, *see id.*, and deadly force is objectively reasonable when an officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others…" *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017).

The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including… whether the suspect poses an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396. "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

"While the ultimate determination of reasonableness must be based on the totality of the circumstances," courts have repeatedly found the following three factors to be helpful to the analysis: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Mitchell v. Schlabach*, 864 F.3d 416, 421 (6th Cir. 2017).

An officer's conduct must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Because "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation," *id*. at 396-97, courts "must avoid substituting [their] personal notions of proper police procedure for the instantaneous decision of the officer at the scene." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). Therefore, courts "must never allow the theoretical, sanitized world of [their] imagination to replace the dangerous and complex world that policemen face every day." (*Id.*).

When assessing deadly-force claims involving vehicular flight, "the critical question is typically whether the officer has 'reason to believe that that [fleeing] car presents an imminent danger' to 'officers and members of the public in the area.'" *Cass v. City of Dayton*, 770 F.3d 368, 375 (quoting *Smith v. Cupp*, 430 F.3d 766, 755 (6th Cir. 2005). "An officer is justified in using deadly force against 'a driver who objectively appears ready to drive into an officer or bystander with his car.'" (*Id*. (quoting *Hermiz v. City of Southfield*, 484 Fed.Appx. 13, 16 (6th Cir.2012))). In fact, an officer may "continue to fire at a fleeing vehicle even when no one is in the vehicle's direct path when 'the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car.'" (*Id*. (quoting *Hermiz*)).

Here, Officer Morrison had probable cause to believe that Whitmer posed an imminent threat of serious physical harm when he fired his gun. The three factors from *Mitchell v. Schlabach* also support a determination that Officer Morrison's actions were objectively reasonable.

### a.    <u>The crime at issue was severe</u>

While the original 911 call was in regard to a verbal argument, Whitmer escalated the event by the time Officer Morrison arrived, when he refused all of the commands from police officers and proceeded to operate his vehicle to strike a police cruiser two times and ultimately drive the vehicle directly towards Officer Morrison. (Ex. 3, at 00:04-00:31). By the time Officer Morrison arrived at the scene, Whitmer was actively ignoring Officer Tracy's commands to exit the vehicle, was operating his vehicle in a dangerous manner by striking a police cruiser two times, and was attempting to flee the scene. (Ex. 3, at 00:04-00:31). "Any reasonable and well-trained officer would reach a conclusion that the vehicle was a weapon and that a serious crime was being committed." (Ex. 4, pg. 19).

In *Smith v. Freland*, the driver of a vehicle was initially pursued for running a stop sign. *Smith v. Freland*, 954 F.2d 343, 344 (6th Cir.1992). While the incident started as a minor traffic offense, the severity increased when the driver failed to comply with an officer's commands to pull over. Ultimately, the driver pulled onto a dead-end street and the pursuing officer placed his cruiser as close to the fleeing vehicle as possible, in an attempt to prevent the driver from escaping. (*Id.*).

When the officer exited his cruiser and approached the driver's vehicle, the driver suddenly backed up his car and sped forward and crashed into the officer's cruiser. (*Id.*). The driver then backed up again and zoomed around the police cruiser, smashing into a fence and a gate as he did so. (*Id.*). As the driver's vehicle drove past, the officer fired his gun at the vehicle, which killed the driver. (*Id.*). The entire incident on the dead-end street lasted approximately sixty-seven seconds. (*Id.*).

The Sixth Circuit in *Smith v. Freland* concluded that a car can be a deadly weapon. (*Id*. at 347). Additionally, the Court held that the driver had proven he would do almost anything to avoid capture and that the officer acted reasonably when he used deadly force. (*Id*. at 348). Just like in *Smith*, Whitmer accelerated his car as a weapon to ramrod through a police cruiser. The crime of attempting to hit police officers with his deadly weapon was a severe crime.

### b.  Whitmer posed an immediate threat to the safety of the officers or others

Officers are trained that being struck by a vehicle can clearly cause serious bodily harm or death. (*Id*.). Whitmer demonstrated that he did not care if officers or others were harmed by his behavior when he crashed into a police cruiser twice and accelerated towards officers, all with his child in the backseat of the vehicle. (Ex.3 at 00:17-00:32). Whitmer's threat to the safety of the officers or others was certainly immediate. Within 40 seconds, Whitmer crashed his vehicle into Officer Tracy's patrol car twice and accelerated towards Officer Morrison. (*Id*.).

Whitmer's actions were no different than the driver of the vehicle in *Cass v. City of Dayton*, who also ignored officer's command to stop the car, accelerated his vehicle towards two police officers, and ultimately struck both officers with his vehicle. *Cass* at 372. Within seconds of the vehicle hitting an officer in the leg, the officer fired his gun into the vehicle, killing the front-seat passenger. (*Id.*). In that case, the Sixth Circuit found that the officer's use of deadly force was objectively reasonable. (*Id*. at 376). The Court held that the driver of the vehicle accelerated towards the officer and demonstrated that he was either willing to injure an officer that got in the way of his escape or was willing to persist in extremely reckless behavior that threatened the lives of all those around. (*Id.*). These are the same actions Whitmer took on July 27, 2021.

### c.    <u>Whitmer was actively attempting to evade arrest by flight</u>

It is clear that Whitmer was actively attempting to evade arrest by flight by refusing commands from the police officers and by attempting to drive his vehicle away from the scene. (Ex. 4, pg. 21). Rather than exit the vehicle as he was ordered, Whitmer rammed his vehicle into a police cruiser twice to clear space for his escape. (Ex. 3, at 00:17-00:26). The driver in *Hocker v. Pikeville City Police Dept.* engaged in the same conduct as Whitmer.

In *Hocker*, two police officers approached a suspect in a vehicle and ordered the suspect to turn off the car. *Hocker v. Pikeville City Police Dept.*, 738 F.3d 150, 152 (6th Cir. 2013). Rather than comply with officers' orders, the driver put his vehicle in reverse, accelerated quickly, and rammed a police cruiser. (*Id.*). As a result, both police officers opened fire on the driver's vehicle. (*Id.*).

The Sixth Circuit held that the officers did not use excessive force when they fired twenty shots at the vehicle to prevent the escape of a suspect and that the officers had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officers or others. (*Id.* at 154). Similarly to *Hocker*, Whitmer was actively attempting to evade arrest by flight when he disobeyed two officers' commands and rammed his car into a police cruiser twice, to remove the police barricade and flee the scene.

### d.    <u>Totality of the circumstances</u>

Under the totality of the circumstances, Officer Morrison had probable cause to believe Whitmer posed a serious and immediate threat of deadly harm and his use of deadly force was objectively reasonable. Officer Morrison observed Whitmer refuse to comply with repeated officer commands to exit his vehicle, observed Whitmer drive his vehicle into Officer Tracy's patrol car twice, and observed Whitmer accelerate his car towards Officer Morrison. As demonstrated by

17

Officer Morrison's body worn camera video footage, this was the epitome of a split-second decision, and the Court should not second-guess Officer Morrison's assessment, made on the scene, of the danger presented by Whitmer. *See Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (*per curiam*).

### 2. <u>Officer Morrison is entitled to qualified immunity</u>

Additionally, Officer Morrison is entitled to qualified immunity on Plaintiff's excessive force claim because he did not violate any clearly established right of which a reasonable officer would have known. The use of deadly force by Officer Morrison was consistent with generally accepted policies, practices, training, and industry standards. (Ex. 4, pg. 16). "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). An officer cannot be said to have violated a clearly established right "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." (*Id.*).

Existing precedent must place the statutory or constitutional question confronted by the officer beyond the debate. (*Id.*). Here, Plaintiff cannot identify any case law where an officer under sufficiently similar circumstances was held to have violated the Fourth Amendment. Accordingly, Officer Morrison is entitled to qualified immunity and summary judgment on Plaintiff's excessive force claims.

### C.     Plaintiff's State-Law claims against Officer Morrison fail

#### 1.     Officer Morrison's use of deadly force was objectively reasonable

Plaintiff has also asserted Ohio state-law claims against Officer Morrison for assault and battery and wrongful death. (Doc. 1, Page ID  14). A finding that an officer's use of deadly force was objectively reasonable forecloses related state law claims against an officer based upon that use of force. *Cass v. City of Dayton*, 770 F.3d 368, 377 (6th Cir. 2014). Unless a plaintiff can demonstrate an officer's use of force was objectively unreasonable, a plaintiff "cannot show that the officer[] acted with malicious purpose, in bad faith, or in a wanton or reckless manner." *Sherrod v. Williams*, 2019 WL 267175, *27.

Additionally, Officer Morrison is immune from liability for Plaintiff's assault, battery, and wrongful death claims pursuant to O.R.C. § 2744.03(A)(6). An employee of a political subdivision is statutorily immune from tort liability unless (a) their acts or omissions were manifestly outside the scope of their employment or official responsibilities; (b) their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) civil liability is expressly imposed upon them by some other section of the Ohio Revised Code. (O.R.C. § 2744.03(A)(6)). The statute creates a presumption of immunity, and Plaintiff must provide sufficient evidence to rebut it with one of those three statutory exceptions. *See Cook v. Cincinnati*, 103 Ohio App. 3d 80, 90 (Ohio App. 1st Dist., 1995).

None of the exceptions to immunity in O.R.C. § 2744.03(A)(6) apply here. Officer Morrison was acting within the course and scope of his employment and official responsibilities at all relevant times. As previously explained, Officer Morrison acted reasonably and therefore he did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. There is no

provision of the Ohio Revised Code that would otherwise impose liability upon Officer Morrison for the conduct about which Plaintiff complains.

Statutory immunity shields Officer Morrison from Plaintiff's state-law claims for the same reason qualified immunity shields him from the excessive force claim. *See Wilkerson v. City of Akron*, 906 F.3d 477, 484 (6th Cir. 2018); *Chappell*, 585 F.3d at 916 n.3. Officer Morrison is statutorily immune from tort liability because no immunity exceptions apply to Plaintiff's state-law claims.

## IV.    CONCLUSION

There is no reasonable dispute as to the material facts at issue in this case. For the reasons stated above, Officer Morrison respectfully moves this Court for summary judgment on all claims asserted against him in this action and for a final judgment entry in his favor.

Respectfully submitted,

FROST BROWN TODD LLP


By: */s/ Charles B. Galvin*
     Frank J. Reed, Jr. (0055234)
     10 West Broad Street, Suite 2300
     Columbus, Ohio 43215
     Telephone (614) 464-1211
     Facsimile (614) 464-1737
     Email: freed@fbtlaw.com

     Charles B. Galvin (0091138)
     9277 Centre Pointe Drive, Suite 300
     West Chester, Ohio 45069
     Telephone (513) 870-8200
     Facsimile (513) 870-0999
     Email: cgalvin@fbtlaw.com

     Paul-Michael La Fayette (0067031)
     65 East State Street, Suite 2550
     Columbus, Ohio 43215
     Telephone (614) 683-8471
     Facsimile (888) 356-3590
     Email: Paul.LaFayette@fmglaw.com

     *Attorneys for Defendant Cecil A. Morrison, IV*


## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28th, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.


     */s/ Charles B. Galvin*
     Charles B. Galvin (0091138)


0126311.0760569  4921-7657-6779v9